EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Wilson Soto Molina<br><br>Peticionario | Certiorari<br><br>2014 TSPR 82<br><br>191 DPR ____ |

Número del Caso: CC-2012-0755

Fecha: 30 de junio de 2014

Abogado de la Parte Peticionaria:

     Lcdo. Harry N. Padilla Martínez

Abogado de la Parte Recurrida:

     Lcdo. Rubén Falú Allende

Materia: Derecho Penal – Delito menor incluido; delitos de influencia indebida y soborno.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

   Recurrido

      v.                        CC-2012-755     Certiorari

Wilson Soto Molina

   Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 30 de junio de 2014.

> La premisa es sencilla, pero de inconmensurable valor: en un régimen de leyes nadie tiene derecho a un trato preferente y ventajoso basado en el dinero, la ventaja o la mejor relación personal. Nuestra administración pública está cimentada en el fiel desempeño del ejercicio por los funcionarios públicos, sin que para ello medie paga adicional alguna o consideraciones extrañas a los méritos del asunto en cuestión.[1]

El presente caso nos brinda la oportunidad de expresarnos con relación a la figura del "delito menor incluido" y, específicamente, si

---

[1] In re Franco Soto, 115 DPR 740, 752 (1984).

el "delito de influencia indebida"[2] está contemplado como un delito menor incluido en el delito de soborno agravado[3]. Contestamos esta interrogante en la negativa. Sin embargo, con relación a los demás errores señalados por el peticionario, determinamos que los mismos no se cometieron, por lo que se confirma la convicción del peticionario en cuanto al Art. 3.2 (c) de la Ley de Ética Gubernamental, *infra*. A continuación los hechos adjudicados por el Tribunal de Primera Instancia.

## I

El 16 de febrero de 2010 la Oficina del Fiscal Especial Independiente (FEI) presentó contra el Sr. Wilson Soto Molina (peticionario) diez pliegos acusatorios por hechos ocurridos durante los últimos meses del 2004 y principios del 2005. En los mismos se imputó nueve infracciones al Art. 210 del Código Penal de 1974[4] -soborno agravado- por haber solicitado y obtenido dinero siendo alcalde del Municipio de Cataño (Municipio). El décimo pliego acusatorio contenía una violación al Art. 3.2 (c) de la Ley Núm. 12 del 24 de julio de 1985, conocida como la Ley de Ética Gubernamental,[5] por haber solicitado y obtenido dos gallos de pelea valorados en quinientos dólares los

---

[2] Según tipificado en el Art. 213 del Código Penal de 1974, 33 LPRA sec. 4364 (1974).

[3] Según tipificado en el Art. 210 del Código Penal de 1974, 33 LPRA sec. 4361 (1974).

[4] Los hechos imputados fueron cometidos antes de que entrara en vigor el Código Penal de 2004.

[5] 3 LPRA sec. 1823(c).

cuales fueron entregados en la alcaldía por una corporación que tenía contratos con el Municipio. El juicio se celebró en el Tribunal de Primera Instancia (TPI), Sala de Bayamón, por tribunal de derecho.

Durante el juicio, se admitió prueba documental de ambas partes y prueba testifical del FEI. La prueba testifical del FEI consistió en los testimonios del Sr. Rafael Vázquez Marcano, quien para la fecha de los hechos se desempeñaba como Director de Obras Públicas del Municipio; el Sr. Luis Pagán Navedo, quien para la fecha de los hechos se desempeñaba como Director de Finanzas del Municipio; el Sr. Orlando Rivera Alcázar, ingeniero y dueño de la firma ORAM Engineering (ORAM); la Sra. Mayra Ramsamy Nieves, ayudante del peticionario; el Sr. Marcos García Irizarry y la Sra. Elsie Grille Álvarez. Finalmente, se estipuló el testimonio prestado en vista preliminar por el Sr. Ramón Grille Álvarez, quien era ejecutivo y codueño de ORAM.

Según surgió del relato de los testigos, debido al desastre ocurrido por el paso de la Tormenta Tropical Jeanne el peticionario y los jefes de dependencias se reunieron para establecer los planes de acción a seguir. En la reunión se acordó solicitar a ORAM una cotización por la labor del recogido y disposición de los

escombros.[6]  El 16 de septiembre de 2004, ORAM presentó su propuesta y la misma fue aceptada.

Ahora bien, el 24 de septiembre de 2004 el Sr. Juan Salgado Agueda[7] -ayudante especial del peticionario- citó a los señores Rivera Alcázar y Grille Álvarez -ejecutivos de ORAM- a una reunión almuerzo.  Allí, el señor Salgado Agueda les informó que la campaña de reelección del peticionario estaba comenzando y necesitaban una aportación económica de $200,000 en efectivo.  Debido a la oposición de los ejecutivos de ORAM, el señor Salgado Agueda les indicó que si no pagaban esa cantidad tendrían dificultad en cobrar los contratos que tenían con el Municipio.  Ante esa situación, ORAM accedió a lo solicitado con la condición de que pagaría según cobrara dichos contratos.  Así las cosas, según ORAM recibió el pago de las facturas comenzó a pagar la suma solicitada. Los señores Rivera Alcázar y Grille Álvarez declararon que en varias ocasiones cuando le entregaron el dinero al señor Salgado Agueda, este salía de la oficina y luego regresaba sin el dinero manifestando que el alcalde les agradecía su cooperación.

Además, el señor Pagán Navedo, Director de Finanzas del municipio, testificó que el peticionario le insistió

---

[6] ORAM tenía vigente con el Municipio un contrato para servicios de ornato y mantenimiento de áreas verdes.

[7] En las acusaciones por violaciones al Art. 210 del Código Penal de 1974, se le imputó al peticionario haber actuado en conjunto y común acuerdo con el Sr. Juan Salgado Agueda.  No obstante, este coacusado falleció antes de la celebración del juicio.

en varias ocasiones que le pagara las facturas a ORAM y a otros contratistas porque iban a dar dinero para su campaña política. Expresó que el 4 de octubre de 2004 el peticionario reunió a varios funcionarios municipales. En la reunión le inquirió al señor Pagán Navedo por qué no había sacado el pago de ORAM. Este le contestó que no había visto los contratos ni las facturas y que no había suficiente dinero en la caja para hacer el pago. Según el señor Pagán Navedo, el peticionario le indicó que tenía que sacar el pago porque ORAM iba a dar dinero para la campaña y le ordenó que cambiara unos certificados de depósitos que tenía el Municipio. Luego de esta reunión, en varias ocasiones, tanto el peticionario como el señor Salgado Agueda, le pidieron e insistieron al señor Pagán Navedo que sometiera los pagos a ORAM. Ante la irregularidad de las presiones para pagarles a los contratistas, el señor Pagán Navedo solicitó reunirse con el peticionario. Mientras este le manifestaba sus inquietudes, el peticionario lo interrumpió y le indicó que tenía que entender que esas personas fueron las que pagaron su campaña.

Por otro lado, mientras el peticionario inspeccionaba las obras realizadas por ORAM le expresó al señor Grille Álvarez que era gallero y le preguntó si conocía de alguien que vendiera gallos de pelea, ya que quería entrenarlos para pelear el próximo año. El señor Grille Álvarez se comunicó con su hermana, la señora

Grille Álvarez, para que le consiguiera los gallos. Esta le pidió a su novio, el señor García Irizarry y quien era criador de gallos de pelea, que los consiguiera. Así las cosas, la señora Grille Álvarez le entregó a su hermano dos gallos de pelea valorados entre doscientos y quinientos dólares. Los señores Grille Álvarez y Rivera Alcázar acudieron a la oficina del peticionario y le entregaron personalmente los dos gallos.

Luego de evaluar toda la prueba, el Tribunal de Primera Instancia encontró culpable al Sr. Wilson Soto por nueve infracciones al Art. 213 del Código Penal de 1974, por el delito de influencia indebida y por una violación al Art. 3.2(c) de la Ley de Ética Gubernamental, *supra*. Es importante destacar que el Sr. Wilson Soto nunca fue acusado por el delito de influencia indebida. El 8 de agosto de 2011, el FEI presentó una moción para que se impusieran agravantes a la sentencia, al amparo de la Regla 171 de Procedimiento Criminal. Por su parte, el peticionario se opuso a la solicitud. A tenor de lo anterior, el foro de instancia analizó los argumentos de ambas partes y si procedía imponer una pena de multa o de reclusión. El informe pre-sentencia no recomendó nada al respecto; solo indicó que no se recomienda al señor Soto Molina para los beneficios de una sentencia suspendida. El 16 de septiembre de 2011 dictó sentencia en la que condenó al peticionario a cumplir tres años de cárcel por cada infracción al

Art. 213, *supra*, a ser cumplidos concurrentemente entre sí y un año de reclusión por la violación al Art. 3.2(c), *supra*, a ser cumplido en forma consecutiva con la anterior.

Inconforme con esa determinación, el 16 de septiembre de 2011, el peticionario acudió al Tribunal de Apelaciones (TA) mediante apelación. En síntesis alegó que el Tribunal de Primera Instancia erró al resolver que: (1) el delito de influencia indebida es un delito menor incluido en los delitos de soborno y soborno agravado, (2) la evidencia desfilada sostenía las nueve infracciones al Art. 213, *supra*, y a la violación al Art. 3.2(c), *supra*, (3) al declararlo culpable sin demostrar que su culpabilidad fuera establecida más allá de duda razonable, (4) al imponerle pena de cárcel y no una pena de multa, (5) al imponer las penas de forma consecutiva y no concurrente, y (6) al dictar una pena fija en vez de una pena con atenuantes. El 13 de julio de 2012 el foro intermedio emitió una sentencia en la que confirmó la sentencia dictada por el Tribunal de Primera Instancia.

En desacuerdo con la decisión del Tribunal de Apelaciones, el peticionario presentó un recurso de *certiorari* ante esta Curia, en el que señaló los siguientes errores:

> **Cometieron error el T.P.I. y el T.A. al resolver que el Art. 213 del Código Penal de 1974 —influencia indebida— es un delito menor incluido en los delitos de soborno y**

soborno agravado que tipificaban los Arts. 209 y 210 del Código Penal de 1974.

Cometieron error el T.P.I. y el T.A. al resolver que la evidencia desfilada por el Ministerio Público sostenía nueve convicciones por infracción al Art. 213 del Código Penal de 1974.

Cometieron error el T.P.I. y el T.A. al resolver que la evidencia desfilada por el Ministerio Público sostenía una convicción por infracción al Art. 3.2(c) de la Ley de Ética Gubernamental.

Cometieron error el T.P.I. y el T.A. al declarar convicto al peticionario por las infracciones al Art. 213 del Código Penal de 1974, y el Art. 3.2(c) de la Ley de Ética Gubernamental sin que dicha culpabilidad fuera establecida más allá de duda razonable como lo requiere el Art. II, sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico.

Abusó de su discreción el T.P.I. al dictar sentencia de cárcel en contra del peticionario y no una de pena de multa, ya que el informe pre-sentencia justificaba esta última y no la que se impuso. El T.A. repitió ese mismo error.

Abusó de su discreción el T.P.I. al imponer penas de forma consecutiva y no concurrente entre sí. El T.A. repitió ese mismo error.

Cometió error el T.P.I. al dictar sentencia en contra del peticionario y determinar que la pena adecuada era la pena fija, y no una con atenuantes. El T.A. repitió ese mismo error.

Cometió error el T.P.I. al dictar las sentencias contra el peticionario sin conceder los beneficios del Art. 79 del Código Penal de 2004, 33 L.P.R.A. sec. 4707. El T.A. repitió ese mismo error.

Expedido el recurso y con el beneficio de las comparecencias de ambas partes, resolvemos.

**II**

El peticionario nos señala que cometieron error el TPI y el TA al resolver que el Art. 213 del Código Penal de 1974 –influencia indebida- es un delito menor incluido en los delitos de soborno y soborno agravado que tipificaban los Arts. 209 y 210 del Código Penal de 1974. Además, nos plantea que a su vez erraron los tribunales *a quo* al resolver que la evidencia desfilada por el Ministerio Público sostenía nueve convicciones por infracción al Art. 213, *supra*. Así pues, procedemos a discutir el derecho aplicable.

La Constitución del Estado Libre Asociado de Puerto Rico, en su Art. II, Sec. 11 expresa que

> [e]n todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público, a **ser notificado de la naturaleza y causa de la acusación** recibiendo copia de la misma, a carearse con los testigos de cargo, a obtener la comparecencia compulsoria de testigos a su favor, a tener asistencia de abogado, y a gozar de la presunción de inocencia.[8] (Énfasis nuestro).

Por otra parte, es norma constitucional reiterada que para que el Estado pueda procesar criminalmente a un ciudadano, el debido proceso de ley exige que el acusado conozca la naturaleza y extensión de los delitos que se le imputa. Para ello, el pliego acusatorio debe incluir

---

[8] Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico.

una exposición de todos los hechos que constituyen el delito específico.[9] Este precepto constitucional es recogido estatutariamente en la Regla 38(d) de Procedimiento Criminal, la cual establece lo siguiente:

> Si la incongruencia o desacuerdo es de tal naturaleza que la prueba estableciere un delito distinto del imputado, no incluido en este, o estableciere la comisión de un delito fuera de la competencia del tribunal, se deberá disolver el jurado y se sobreseerá el proceso.

Como surge de la referida regla, **no se permite encontrar convicto a un acusado por un delito distinto al imputado en la acusación.** Sin embargo, a modo de excepción, se permite encontrar convicto por un delito distinto siempre y cuando el delito por el cual se le encuentra convicto es uno menor incluido en el delito mayor imputado. A estos efectos, en el pasado hemos explicado que para que un delito se considere como un delito menor incluido este

> debe estar comprendido en el mayor por el cual se le acusa y que los hechos expuestos para describir la comisión del delito mayor deben contener las alegaciones que son esenciales para constituir una imputación por el menor. Si el delito mayor incluye todos los elementos de hecho y los requeridos por la Ley en relación con el menor, el mayor incluye al menor; **pero si el delito menor requiere algún otro elemento indispensable que no es parte del delito mayor entonces el menor no está comprendido en el mayor.** La prueba para determinar si un delito está incluido en otro es determinar si no

---

[9] Pueblo v. Pagán Rojas, 187 DPR 465 (2012); Pueblo v. Vélez Rodríguez, 186 DPR 621 (2012); Pueblo v. González Olivencia, 116 DPR 614 (1985); Pueblo v. Santiago Cedeño, 106 DPR 663 (1977).

> se puede cometer el primer delito sin que necesariamente se cometa el segundo.[10] (Énfasis nuestro).

Asimismo, hemos establecido que para poder considerar que un delito menor está incluido en el mayor, "todos los ingredientes legales del *corpus delicti* del delito menor deben estar en el mayor; **el delito menor debe ser parte de hecho, del mayor,** además **de estar enmarcado dentro de la definición legal del mayor como parte del mismo**".[11]   (Énfasis nuestro).

En cuanto a los delitos en controversia en nuestro caso, el delito de soborno castiga el hecho de que un servidor público cobre por su parte por un servicio que de ordinario es gratuito, aprovechándose de la autoridad del cargo que ocupa.[12] Por su parte, el delito de influencia indebida penaliza el tratar o lograr obtener un beneficio –de cualquier tipo– **por pretender ejercer una influencia** –ya sea real o imaginaria– en el desempeño del ejercicio de un funcionario o empleado público como tal. En particular, el delito de soborno queda tipificado en el Art. 209, *supra*, como sigue:

> **Todo funcionario o empleado público,** o jurado, o árbitro, o cualquier persona autorizada en ley para oír o resolver alguna cuestión o controversia, **que solicite o reciba,** directamente o por

---

[10] Pueblo v. Oyola Rodríguez, 132 DPR 1064, 1071 (1993). Véase, además, Pueblo v. Concepción Sánchez, 101 DPR 17, 19 (1973); Pueblo v. Ramos López, 85 DPR 576, 580 (1962).

[11] Pueblo v. Concepción Sánchez, *supra*.

[12] Pueblo v. Bigio Pastrana, 116 DPR 748, 758 (1985).

persona intermedia, para sí o para un tercero, dinero o cualquier beneficio, o aceptare una proposición en tal sentido, **por realizar un acto regular de su cargo o función**, será sancionado con pena de reclusión por un término fijo de nueve (9) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo, de quince (15) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años.[13] (Énfasis nuestro).

A estos efectos, el propio Código Penal de 1974 define en su Art. 7 (16) el término "funcionario público" o "empleado público" como:

toda persona que ejerza un cargo o desempeñe una función retribuida o gratuita, permanente o temporal, en virtud de cualquier tipo de nombramiento, contrato o designación, para la rama legislativa, ejecutiva o judicial del Estado Libre Asociado de Puerto Rico, o en cualquiera de sus municipios, agencias o corporaciones públicas, subdivisiones políticas y demás dependencias públicas.[14]

Por otra parte, el término "beneficio" se define como cualquier provecho, utilidad, ventaja, o ganancia, no estando limitado el término a una ganancia pecuniaria o material, sino que denota cualquier forma de ventaja.[15]

En esencia, el delito de soborno consiste en solicitar o recibir, directamente o por medio de un intermediario, dinero o cualquier beneficio, ya sea para

---

[13] Art. 209 del Código Penal de 1974, 33 LPRA sec. 4360 (1974).

[14] Art. 7(16) del Código Penal de 1974, 33 LPRA sec. 3022 (16) (1974).

[15] Art. 7(6) del Código Penal de 1974, 33 LPRA sec. 3022(6) (1974).

beneficio propio o para un tercero, por realizar **algún acto regular del cargo o función.**[16] En el pasado hemos explicado que para que se constituya el delito de soborno, **es esencial que el funcionario tenga "la competencia dentro de su cargo para hacer lo que se ha acordado a cambio del beneficio que se le ofrece".**[17]

El delito en cuestión se configura tan pronto el funcionario público acepta la proposición objeto del soborno, o cuando solicita el beneficio por sí o por medio de una tercera persona a cambio de llevar a cabo un acto regular de su cargo o función oficial. No es necesario que el acto delictivo objeto del soborno se lleve a cabo.[18]

Se comete soborno en su modalidad agravada cuando según tipificado en el Art. 210, *supra*,

> el funcionario o empleado público o jurado o árbitro, o la persona autorizada en ley para oír o resolver una cuestión o controversia, solicitare, o recibiere el dinero, o el beneficio, o aceptare la promesa, **por omitir o retardar un acto regular de sus funciones o por ejecutar un acto contrario al cumplimiento regular de sus deberes,** o con el entendido o en la inteligencia de que tal remuneración o beneficio habrá de influir en cualquier **acto, decisión, voto o dictamen de dicha persona en su carácter oficial,** la pena de reclusión será por término fijo de doce (12) años. De mediar circunstancias

---

[16] D. Nevares-Muñiz, Código Penal de Puerto Rico Revisado y Comentado, ed. 2000, Instituto para el Desarrollo del Derecho, 2000, pág. 430.

[17] Pueblo v. Bigio Pastrana, supra, pág. 758.

[18] Pueblo v. Rosado Figueroa, 138 DPR 914, 1088 (1995).

agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de veinte (20) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de ocho (8) años.[19] (Énfasis nuestro).

Por otra parte, el delito de influencia indebida queda tipificado en el Art. 213, *supra*, como sigue:

> **Toda persona** que **obtuviere o tratare de obtener** de otra cualquier beneficio **asegurando o pretendiendo que se halla en aptitud de influir en cualquier forma en la conducta de un funcionario o empleado público** en lo que respecta al ejercicio de sus funciones, será sancionada con pena de reclusión por un término fijo de tres (3) años, o multa no menor de quinientos un (501) dólares ni mayor de cinco mil (5,000) dólares, o ambas penas a discreción del tribunal. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de cinco (5) años, o multa no menor de quinientos un (501) dólares ni mayor de diez mil (10,000) dólares, o ambas penas a discreción del tribunal; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de un (1) año, o multa no menor de quinientos un (501) dólares ni mayor de tres mil (3,000) dólares, o ambas penas a discreción del tribunal.[20]

Como surge claramente del texto, esta prohibición no se limita a funcionarios o empleados públicos, sino que se extiende a toda persona que **asegure o pretenda que se halla en aptitud de influenciar a un funcionario o empleado público.** Tampoco es requerido que el autor del delito obtenga un beneficio en su propio patrimonio, sino

---

[19] Art. 210 del Código Penal de 1974, *supra*.

[20] Art. 213 del Código Penal de 1974, *supra*.

que es suficiente que obtenga o intente obtener un beneficio en favor de un tercero.[21]

## III

Examinemos, pues, la aplicación de los fundamentos antes expuestos al caso de autos. Para atender el asunto, limitaremos la controversia a si una convicción por el delito de influencia indebida puede sostenerse bajo la doctrina del delito menor incluido, toda vez que el convicto fue acusado por el delito de soborno agravado. En este contexto es importante recalcar como asunto de umbral que, sometida toda la prueba, el Ministerio Público no logró convencer a la Honorable Juez del Tribunal de Primer Instancia de que existían los elementos necesarios para una convicción por las nueve infracciones de soborno agravado imputadas en el pliego acusatorio. De hecho, la distinguida sala de instancia, y conforme a la misma prueba, ni siquiera encontró los elementos necesarios para determinar una convicción por el mismo delito en su modalidad simple (Art. 209). Es decir, hubo una absolución implícita en cuanto a esos delitos.[22] Luego de analizada la controversia, determinamos que las convicciones por el delito de influencia indebida tampoco se sostienen bajo un pliego acusatorio que imputaba el delito de soborno agravado.

---

[21] Pueblo v. Luzón, 113 DPR 315, 320 (1982).

[22] Véanse Green v. United States, 355 US 184 (1957); Pueblo v. Pérez Martínez, 84 DPR 181 (1961).

El debido proceso de ley exige que el acusado sea notificado del delito en su contra para poder preparar una defensa adecuada ante la acusación del Estado. Lo anterior solo se logra cuando el acusado es notificado de todos los elementos de la conducta que motiva el proceso penal en su contra. Lo contrario, es sencillamente impermisible bajo nuestro ordenamiento penal. Es por esto que para sostener una convicción por el delito de influencia indebida como un delito menor incluido, los elementos del mismo deben estar contenidos en su totalidad en el delito mayor, en nuestro caso, el de soborno agravado. Por consiguiente, para sostener la convicción por influencia indebida, estaríamos forzados a concluir que siempre que se comete el delito de soborno agravado, a su vez se comete el de influencia indebida. De antemano adelantamos que, por el propio texto de ambos estatutos, claramente podrían existir circunstancias en las cuales se comete el delito de soborno agravado, y no así el de influencia indebida. Veamos.

Para conseguir una convicción por la conducta tipificada en el delito de soborno agravado es necesario probar los siguientes elementos: (1) que el sujeto es un funcionario o empleado público, jurado, árbitro o una persona autorizada en ley para oír o resolver una cuestión o controversia; (2) que solicite, reciba o acepte la promesa de recibir; (3) dinero o un beneficio; (4) por omitir o retardar un acto regular de sus

funciones o por ejecutar un acto contrario al cumplimiento regular de sus deberes, o con el entendido o en la inteligencia de que tal remuneración o beneficio habrá de influir en cualquier acto, decisión, voto o dictamen de dicha persona en su carácter oficial.

Como podemos observar, el delito de soborno agravado está dirigido a castigar al **funcionario público** o a la **persona autorizada** a resolver una controversia, que contrario a lo que se espera, omite, retarda o ejecuta un acto regular de su cargo de manera irregular a cambio de una remuneración o beneficio de algún tipo. En primer lugar, de un análisis de estos elementos se desprende que dicho delito solo requiere la existencia de **dos sujetos**: (1) el sujeto –activo– al cual se le solicita u ofrece el soborno, aunque esto se realice por medio de un intermediario, y (2) el sujeto –activo– que es el funcionario público que solicita o recibe el soborno, a cambio de actuar de cierta manera antijurídica.

Por otra parte, para hallar cometida la conducta tipificada en el delito de influencia indebida es necesario probar lo siguiente: (1) que el sujeto de la conducta es una persona, sea o no funcionario público; (2) que ha obtenido o intentado obtener de otra persona cualquier beneficio; (3) que tal beneficio lo ha obtenido o intentado obtener **asegurando o pretendiendo que se halla en aptitud de influir en cualquier forma en la**

**conducta de un funcionario o empleado público en lo que respecta al ejercicio de sus funciones.**

Para que se constituya el delito de influencia indebida, es necesaria la coexistencia de **tres sujetos:** (1) el sujeto -activo- que obtiene o trata de obtener un beneficio bajo la promesa de que se halla en aptitud de influenciar a un empleado o funcionario público; (2) el sujeto -activo- del que se obtiene o se pretende obtener el beneficio a cambio de la promesa del primer sujeto, y; (3) el sujeto -pasivo- que es el empleado o funcionario público objeto de la promesa, independientemente de que la influencia que el primer sujeto aduce tener sobre este sea real o imaginaria.[23] Cabe señalar, que el funcionario o empleado público puede conocer o ignorar sobre el negocio antijurídico entre los dos sujetos activos. De manera que en este delito el negocio antisocial que se busca prohibir es aquel en el cual el objeto negociado es la promesa de un externo de que se halla capacitado y a disposición de influenciar el poder decisional de un empleado o funcionario público en su carácter oficial.

Como puede verse, los delitos de influencia indebida y soborno agravado están dirigidos a salvaguardar la pureza del desempeño de la función pública. Sin embargo, cabe destacar que aunque estos delitos custodian el mismo interés, tienen propósitos muy

---

[23] El estatuto penaliza el tratar o lograr un beneficio por pretender ejercer una influencia -real o imaginaria—en cualquier forma en la conducta de un funcionario, en lo que respecta al ejercicio de sus funciones.

distintos. Los primeros, soborno y soborno agravado, están dirigidos a sancionar la traición a la fiducia del País de una persona que, estando en una posición de poder decisional, actúa intencionalmente fuera de los parámetros de lo correcto a cambio de algún beneficio. En cambio, el delito de influencia indebida pretende proteger un interés que, aunque importante, no tiene el mismo peso social que el soborno, y por eso su pena es mucho menor. El delito de influencia indebida castiga la conducta exhibida por cualquier persona que obtenga o intente obtener cualquier beneficio a cambio de la promesa de que se halla apto de influir a **un empleado o funcionario público** en su carácter oficial. Así, para que este delito se concrete se requiere de un sujeto adicional a los requeridos en los delitos de soborno o soborno agravado, y que tal sujeto ostente una posición como funcionario o empleado público. Ese será el sujeto pasivo quien, aunque podrá o no ser real, debe existir en la mente del sujeto que ofrece el beneficio a cambio de la promesa de que otro ejerza su influencia sobre el sujeto pasivo. Mientras, en el delito de soborno agravado basta con solamente la participación de los dos sujetos activos.

Por otra parte, el delito de soborno requiere la condición de que una de las dos personas activas tenga o aparente tener el poder de conseguir el objeto del soborno, **por sí solo,** *id est*, **sin la necesidad de**

**intermediarios con acceso a ese poder.** Sin embargo, en el caso del delito de influencia indebida, se hace innecesario dicho poder directo, pues se trata de "vender" la promesa de que se tiene la "influencia" suficiente para conseguir que **otro -un funcionario o empleado público-** ejecute la acción "indebida". Como podemos ver, no se trata de un elemento adicional de uno o del otro, sino de elementos totalmente distintos. Por esto es claro que se puede cometer el delito de soborno o soborno agravado sin que se cometa el delito de influencia indebida, y viceversa.

Como puede deducirse, el delito del soborno en sus dos modalidades (Arts. 209-210) **está dirigido a** castigar la conducta de la persona **que ocupa el cargo o la posición** que le permite sobornar o aceptar el soborno.[24] Por otro lado, en el delito de influencia indebida la persona imputada del delito evidentemente no tiene el poder de conseguir directamente lo indebido, y por eso **la conducta que se sanciona o el sujeto de la imputación es el que hace la promesa u ofrecimiento de influenciar a aquel que alegadamente sí puede llevar a cabo la acción indebida.**

Por ello, y toda vez que ambos delitos, el soborno y la influencia indebida, cuentan con elementos indispensables que son particulares de cada uno, no puede concluirse que el segundo sea un delito menor

---

[24] No ignoramos que el Art. 212 del mismo Código Penal castiga la conducta del que ofrece el soborno, cuando ese es el caso.

incluido en el primero. Por todo lo anterior, y por el señor Soto Molina nunca haber sido acusado por el delito de influencia indebida, determinamos que su convicción por dicho delito no se realizó conforme a derecho. Procede entonces, absolverlo de ese delito. En vista de lo anterior, resulta innecesario expresarnos sobre el segundo señalamiento de error.

**IV**

El peticionario señala a su vez que cometieron error el TPI y el TA al resolver que la evidencia desfilada por el Ministerio Público sostenía una convicción por infracción al Art. 3.2(c) de la Ley de Ética Gubernamental. Además, nos señala que cometieron error el TPI y el TA al declarar convicto al peticionario por las infracciones al Art. 213 del Código Penal de 1974 y al Art. 3.2(c) de la Ley de Ética Gubernamental sin que esa culpabilidad fuera establecida más allá de duda razonable como lo requiere el Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico.

Por tratarse de asuntos estrechamente relacionados a la discreción del Tribunal de Primera Instancia, pasaremos a discutirlos en conjunto.

En repetidas ocasiones nos hemos expresado en cuanto a la deferencia que los tribunales apelativos deben guardar por la apreciación de la prueba que hace el

Tribunal de Primera Instancia.[25]    Sabido es que el foro primario es el que se encuentra en mejor posición de valorar la misma y llegar a sus conclusiones.    De ordinario, los tribunales apelativos no debemos intervenir con el ejercicio de la discreción de los foros de instancia, salvo que se demuestre que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad.[26]

Luego de examinar las circunstancias particulares del presente caso, concluimos que no hubo abuso de discreción, prejuicio, error manifiesto o parcialidad en la decisión del foro primario en cuanto a la convicción del señor Soto Molina por el Art. 3.2(c) de la Ley de Ética Gubernamental.    Sin embargo, en cuanto al Art. 213, *supra*, nos referimos a la discusión en las partes anteriores de esta Opinión.

V

Por entender inmeritorios los demás señalamientos de error del Peticionario a la luz de todo lo antes expuesto, entendemos innecesario entrar a discutir los mismos.

---

[25] Pueblo v. De Jesús Mercado, 188 DPR 467, 477-479 (2013); Ramirez Ferrer v. Conagra Foods P.R., 175 DPR 799, 810-811 (2009); Trinidad v. Chade,  153 DPR 280, 291 (2001); Flores v. Soc. de Gananciales, 146 DPR 45, 50 (1998); Pérez Cruz v. Hosp. La Concepción, 115 DPR 721, 728 (1984).

[26] Trans-Oceanic Life Ins. v. Oracle Corp., 184 DPR 689, 709 (2012). Véase, además, Lluch v. España Service Sta., 117 DPR 729, 745 (1986).

Por todo lo anterior, se modifican las determinaciones de los foros *a quo* y se devuelve el caso al Tribunal de Primera Instancia para que se realice el Informe Pre-Sentencia conforme a lo aquí resuelto y se continúe con los procedimientos.

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

   Recurrido

        v.                    CC-2012-755     Certiorari

Wilson Soto Molina

   Peticionario

SENTENCIA

San Juan, Puerto Rico, a 30 de junio de 2014.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se modifican las determinaciones de los foros *a quo* y se devuelve el caso al Tribunal de Primera Instancia para que se realice el Informe Pre-Sentencia conforme a lo aquí resuelto y se continúe con los procedimientos.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Presidenta señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez concurren con el resultado sin opinión escrita. La Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Estrella Martínez y la Jueza Asociada señora Oronoz Rodríguez no intervinieron.

                             Aida Ileana Oquendo Graulau
                         Secretaria del Tribunal Supremo